## Case No. 1,570.

### In re BLUE RIDGE R. CO.

[2 Hughes (1877) 224;[1] 13 N. B. R. 315; 8 Chi. Leg. News, 290; 4 Am. Law Rec. 456.]

### Circuit Court, D. South Carolina.

BANKRUPTCY — SALE OF BANKRUPT'S PROPERTY— CHARGING PROCEEDS WITH COSTS — SALE FREE FROM MORTGAGE — ADJUSTMENT OF RIGHTS OF MORTGAGEE.

1. When a bankruptcy court, at the suggestion of the general creditors, authorizes the sale of property incumbered by liens, and the proceeds of sale amount to no more than the claims of lien creditors, it has no control over the fund but to pay it to such lien creditors, and the fund is not chargeable with any costs in the bankruptcy proceeding except the actual costs of sale.

2. When property is sold free from a mortgage, the bankruptcy court has no authority to adjust the claims of the trustee under the mortgage against the cestuis que trust, nor to ascertain what is due by him to his counsel.

[Appeal from the district court.]

In bankruptcy. It appears from the record in this case that [bankrupt] the Blue Ridge Railroad Company is a corporation under the laws of South Carolina, and that on the 20th of April, 1854, it executed a mortgage of all its property whatsoever to

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

certain persons therein mentioned to secure the payment of certain bonds named in said mortgage and the interest thereon to accrue. And further it appears that after the mortgage debt aforesaid became due and payable, and was unpaid, certain creditors of the bankrupt filed a petition in the district court, asking that the said corporation might be declared a bankrupt, which was accordingly done, and assignees were duly appointed to take charge of its property. It appears also that the corporation, at the time of its adjudication as a bankrupt, had no other property whatever than that covered by the mortgage, and that the property mortgaged was totally inadequate when sold to pay the debt for which it was pledged. It appears further, that on the 16th of January, 1873, the assignees of the bankrupt filed a petition in the bankrupt court, asking that the property of the corporation mortgaged as aforesaid might be sold, and the court directed a sale thereof, at which sale one Robert K. Scott, who was authorized by his fellow-bondholders to purchase the road in their behalf, became the purchaser thereof, being the highest bidder therefor.

Prior to the sale the bankrupt court made an order directing James Simons, Esq., as special master in the case, "to inquire and report what compensation the trustees and assignees were entitled to, by way of commissions, expenses incurred, services rendered and to be rendered up to and including the sale proposed, and also to inquire and report what fees the counsel for the trustees and assignees were entitled to, and out of what fund payment should be made therefor." Under this order the special master filed his report on the 12th of March, 1874, by which he allowed to the assignees of the bankrupt certain commissions, fees, and expenses for themselves and their counsel, and to the trustees under the mortgage another large sum of money by way of commissions, counsel fees, and expenses, amounting in all to about $30,000, and he directs or recommends that the larger part of these payments be made out of the proceeds of the sale of the mortgaged property, and bases his estimate upon the supposition that the road is worth $250,000. The property of the railroad sold at the sale for fifty thousand dollars. From the order making the reference to Special Master Simons, and from the order overruling the exceptions to his report and confirming the same, the petitioners here file their petition, asking the aid of the supervisory jurisdiction of the circuit court. [Order of reference revoked, and confirmation reversed.]

BOND, Circuit Judge. It is plain from the record in this case that at the time of the filing of the petition in bankruptcy, the bankrupt company had no property the sale of which would produce anything for its general or unsecured creditors. All that it

owned was mortgaged greatly beyond its value.

The only justification of the petition of the assignees for the sale of this property by the bankrupt court is, that they supposed it would realize something for the general creditors. This the sale did not do, and every one concerned in the proceeding had reason to know it would not. When a bankrupt court, at the suggestion of the general creditors, authorizes the sale of property incumbered by liens, and all proceeds of sale amount to no more than the claims of the lien creditors, it has no control over the fund but to pay it to such lien creditors, and it is not chargeable with any costs in the bankrupt proceeding except the actual costs of sale. The fund is sacred and is devoted to the payment of the lien creditors whose property has been sold, and they are chargeable with no other or further costs than they would have incurred had they sold the property under their liens. The assignees in this proceeding were acting not for the benefit of the bondholders who were secured by mortgage, but for the general creditors of the bankrupt. By what rule of equity can the lien creditors be required out of their funds to pay the expenses of a litigation which was solely for the benefit of the general creditors? Both they and their counsel must look to the general assets of the bankrupt estate for payment of their claims, if they be entitled to payment at all. Nor can the allowance by the special master to the trustees and their counsel, which was confirmed by the bankrupt court, be permitted.

The district court, when it ordered the sale of the railroad property, was acting solely for the general creditors. When the property was sold under its order, and it was found there was nothing in hand belonging to them, its sole duty was to ascertain who the lien creditors were, the priority and amount of their claims, and to pay over to them the proceeds of the sale. It had no authority in this proceeding to adjust the claims of the trustees under the mortgage against their cestuis que trust, nor to ascertain what was due by trustees to counsel. The mortgaged property in the hands of the bankrupt court was and is bound for nothing but for the lawful charges for the administration of that property in that court. The sale not being objected to, and no motion being made to set it aside, will be allowed to stand, but the circuit court will pass an order revoking the order of the district court referring this cause to Special Master Simons for report, and reversing the order of the district court confirming the report of said master, and will direct that this cause be remanded to the district court with directions to ascertain what were the actual costs incurred in the sale of said mortgaged property, as determined by the bankrupt law, and which in accordance with this opinion are properly chargeable to the proceeds of this sale.